UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ORGANO GOLD INT'L, INC., <br><br> Plaintiff, <br><br> v. <br><br> AUSSIE RULES MARINE SERVICES, LTD., et al., <br><br> Defendants. | CASE NO. C18-0108JLR <br><br> ORDER GRANTING MOTION TO TRANSFER |

## I. INTRODUCTION

Before the court is Aussie Rules Marine Services ("ARMS"), Greg Norman, and ABG-Shark, LLC's ("Shark") (collectively, "Defendants") motion to transfer this action to the Southern District of Florida, or in the alternative, to dismiss Plaintiff Organo Gold International, Inc.'s ("Organo") complaint for lack of personal jurisdiction. (Mot. (Dkt. # 8).) The court has considered the motion, all of the parties' submissions in support of and in opposition to the motion, the relevant portions of the record, and the applicable

law. Being fully advised,[1] the court GRANTS Defendants' motion to transfer venue pursuant to 28 U.S.C. § 1404(a).

## II. BACKGROUND

Organo, a Nevada corporation, sells "ganoderma-infused beverages, dietary supplements[,] and other nutraceuticals." (Compl. (Dkt. # 1) ¶¶ 1, 8.) Organo has global business operations in "the United States, Canada, Mexico, and over 40 other countries." (*Id.* ¶ 1.) Organo's headquarters are located in Richmond, British Columbia, Canada, but the company also maintains an office in Ferndale, Washington to manage its United States operations. (Resp. at 1.) In Ferndale, Organo maintains "an office and warehouse, and employs 10 people who commute to and from" the Canadian corporate headquarters regularly. (*Id.* at 2.)

Organo representatives met representatives from ARMS, a Cayman Islands corporation controlled by Mr. Norman—a retired professional golfer and a resident of Florida (Compl. ¶¶ 2-3, 10)—for the first time during the 2013 Master's Tournament (Mot. at 3). In July 2013, after the initial meeting, Organo, ARMS, and Mr. Norman entered into two contracts (collectively, "the Agreements"). (*Id.*; Compl. ¶¶ 11-12.) First, the parties entered into the "License Agreement," by which the parties "agreed to develop a specific line of premier coffee products utilizing [Mr.] Norman's name and likeness (the 'Norman Identity') and to promote the product line and Organo's business."

---

[1] No party requests oral argument (*see* Mot. at 1; Resp. (Dkt. # 15) at 1), and the court concludes that oral argument would not be helpful to the disposition of the motion, *see* Local Rules W.D. Wash. LCR 7(b)(4) ("Unless otherwise ordered by the court, all motions will be decided . . . without oral argument.").

(Compl. ¶ 11.) Second, the parties entered into the "Promotion and Services Agreement," by which Mr. Norman "agreed to make personal appearances and perform certain professional management consulting services" related to the new product line ("Branded Products"). (*Id.* ¶ 12.) Under the Agreements, Organo agreed to pay Mr. Norman and ARMS approximately $5 million over five years. (*Id.* ¶ 13.) The Agreements explicitly state that the parties "hereby expressly consent" to the jurisdiction of Florida courts. (Mot., Ex. A ("Agreements") at ¶ 19.8.)[2]

Specifically, under the License Agreement, Defendants granted Organo "the right and license to use the Norman Identity during the Contract Period and throughout the Contract Territory." (*Id.* ¶ 2.2.) In return for the right to use Mr. Norman's brand image, Organo agreed to make "guaranteed payments," pay "monthly royalties," and provide "free product." (Resp. at 3; *id.* ¶ 3.2.) Defendants also retained a certain amount of quality control over the Branded Products and "the Licensing Agreement provided that Organo would organize no fewer than two tastings for each Branded Product to allow for [Mr.] Norman's directional input." (Agreements ¶ 10.4; *see also* Resp. at 3.)

Organo negotiated the Agreements with ARMS and Mr. Norman via email and telephone from the company's Canadian headquarters. (Filon Decl. (Dkt. # 10) ¶ 8; Perrett Decl. (Dkt # 16) ¶ 13.) Once the parties reached a consensus, Organo emailed the contracts to ARMS and Mr. Norman, who signed the Agreements in Florida. (Filon Decl. ¶ 6.) During this time, Mr. Norman and ARMS never visited Organo's Ferndale

---

[2] Neither party disputes the authenticity of the Agreements that Defendants attach to their motion. (*See* Mot.; Resp.; Reply.)

office or warehouse. (*Id.*) Similarly, Organo representatives did not travel to Florida. (Perret Decl. ¶ 13.)

After executing the License Agreement, Mr. Norman received a "high-ranking Organo Distributorship, which he directed to put in the name of his business advisor, David Chessler." (Resp. at 4-5.) Mr. Chessler signed an "Independent Distributor Agreement" ("IDA"), "which permitted the Defendants to sell the products themselves . . . and thereby receive both royalties and commissions from the sale of products by persons under their charge." (*Id.* at 5; *see* Perret Decl. ¶¶ 8, 18.) Mr. Chessler entered "approximately 20 purchase orders, generating approximately $31,000[.00] in commissions." (*Id.* ¶ 18.) The orders were processed and shipped from Organo's Ferndale warehouse. (*Id.*)

On January 24, 2018, Organo filed this suit against Defendants asserting breach of contract. (*See generally* Compl.) Organo contends that ARMS and Mr. Norman breached the Agreements by:

> (1) Not using commercially reasonable efforts to obtain and maintain trademark registrations for the Branded Products using the Norman identity; (2) failing to make Mr. Norman available for the required number of personal appearances; (3) failing to discuss and arrange for availability; (4) failing to take reasonable efforts to promote the Branded Products; (5) failing to establish a business plan; and (6) failing to provide professional management consulting services for Organo's business.

(Resp. at 6; *see also* Compl. ¶¶ 15-17.) Organo also asserts that Mr. Norman "sold or otherwise transferred all of the underlying rights to the subject matter of the License Agreement (the right to exploit the Norman Identity itself)" to Shark without Organo's

//

express consent. (Compl. ¶ 22.) The court now considers Defendants' motion to transfer or dismiss for lack of personal jurisdiction.[3] (*See* Mot.)

### III. ANALYSIS

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). The threshold question is whether the plaintiff could have originally brought the action in the forum proposed for transfer. *See Hoffman v. Blaski*, 363 U.S. 335, 344 (1960). To resolve the threshold question, the moving party must make three showings: (1) that the transferee court possesses subject matter jurisdiction over the action, (2) that venue would have been proper in the transferee court, and (3) that all the parties would be subject to personal jurisdiction in the transferee court. *Id.*

Here, there is no dispute that Organo could have originally brought this suit in the Southern District of Florida. (*See* Mot. at 4; Resp. at 4.) The Southern District of Florida possesses subject matter jurisdiction over this action based on 28 U.S.C. § 1332 because there is complete diversity between Organo and each Defendant, and the amount in controversy exceeds $75,000.00. (*See* Compl. ¶¶ 1-5); *see also* 28 U.S.C. § 1332(a). Furthermore, Organo does not dispute the fact that it consented to personal jurisdiction in

---

[3] The court may consider Defendants' motion to transfer under 28 U.S.C. § 1404(a) without first determining the issue of personal jurisdiction. *See Stanbury Elec. Eng'g, LLC v. Energy Prod., Inc.*, No. C16-0362JLR, 2016 WL 3255003, at *1-2 (W.D. Wash. June 13, 2016) (stating that personal jurisdiction is only necessary if the court seeks to issue a judgment on the merits); *cf. United States v. Berkowitz*, 328 F.2d 358, 360-61 (3d Cir. 1964) (citing *Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 466-67 (1962)).

Florida.  (Resp. at 4; Agreements ¶ 19.8.)  Lastly, venue is proper in the Southern District of Florida because the actions underlying the asserted claims occurred there and the parties are also subject to personal jurisdiction in Florida.  *See* 28 U.S.C. §§ 1391(b)(2), (b)(3).

Once the court resolves the threshold question, district courts have discretion to transfer venue on a case-by-case basis.  *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988).  In determining whether to transfer an action, the district court weighs a number of "case-specific factors."  *Id.*  These factors generally concern the relative impact of the venue on the private parties participating in the litigation; the parties' access to evidence; the availability of compulsory process; "and all other practical problems that make trial of a case easy, expeditious and inexpensive."  *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947).  In deciding a motion to transfer, the Ninth Circuit instructs district courts to consider the following nine factors:

> (1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, (8) the ease of access to sources of proof, and (9) the public policy considerations of the forum state.

*Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498-99 (9th Cir. 2000) (internal

//

//

//

footnotes omitted). "Additionally, the presence of a forum selection clause is a 'significant factor' in the court's § 1404(a) analysis."[4] *Id.* at 499.

Defendants bear the burden of showing that a transfer is appropriate. *See Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255-56 (1981); *T-Mobile USA, Inc. v. Selective Ins. Co. of Am.*, No. C15-1739JLR, 2016 WL 1464468, at *3 (W.D. Wash. Apr. 14, 2016). The decision to transfer, however, "is ultimately left to the sound discretion of the district court and must be made on an 'individualized, case-by-case consideration of convenience and fairness.'" *Stanbury*, 2016 WL 3255003, at *3 (quoting *Stewart*, 487 U.S. at 23)). The court now considers each of the foregoing nine factors in turn, and because the case bears a stronger connection to activities and events in Florida than in Washington, the court grants the motion to transfer.

A.  **Location Where the Agreement was Negotiated and Executed**

The first *Jones* factor considers the location where the agreement was negotiated and executed. *See* 211 F.3d at 498. Organo is a Nevada corporation, licensed and registered to do business in Washington State. (Resp. at 1.) Organo's headquarters, however, are located in Richmond, British Columbia, Canada. (Perrett Decl. ¶ 3.) ARMS is a Cayman Islands limited liability company with its principal place of business in West Palm Beach, Florida (Filon Decl. ¶ 3); Mr. Norman is a resident of West Palm Beach, Florida (Resp. at 2; Compl ¶ 2); and Shark is a Delaware limited liability

---

[4] Defendants claim that the Agreements contain a forum selection clause. (Mot. at 2-3.) The Agreements, however, contain a clause in which the parties merely consent to the jurisdiction of Florida courts. (*See* Agreements ¶ 19.8; Resp. at 11.) Therefore, this factor does not bear on the court's decision.

company with its principal place of business in New York, New York (Dubiner Decl. (Dkt. # 9) ¶ 3). ARMS and Organo's representatives first met in 2013 at the Masters Tournament, a professional golf tournament held annually in Augusta, Georgia. (Filon Decl. ¶ 6.) Over the next few months, the parties engaged in negotiations via email and telephone from the parties' respective offices in British Columbia, Canada and Florida. (*Id.*; Perrett Decl. ¶ 13.) Organo emailed the Agreements to Mr. Norman and ARMS, who then signed the Agreements in Florida. (Filon Decl. ¶6.) Defendants never traveled to Washington to negotiate the Agreements. (Perrett Decl. ¶ 13.)

Thus, the court finds that the parties negotiated the Agreements in part in British Columbia, Canada, and in part in Florida, via email. ARMS and Mr. Norman signed the Agreements in Florida and returned them to Canada. (Filon Decl. ¶ 6.) Because the parties did not negotiate or execute the Agreements in Washington, but instead in British Columbia, Canada, and Florida, the court concludes that this factor weighs in favor of transfer.

**B.     State Most Familiar with the Governing Law**

The second factor favors the state that is most familiar with the governing law. *Jones*, 211 F.3d at 499. The Agreements are to be construed according to Florida law (Mot. at 5; Resp. at 11; Agreements ¶¶ 19.8, 19.10), but "[f]ederal courts are equally equipped to apply distant state laws when the law is not complex or unsettled," *T-Mobile USA*, 2016 WL 1464468, at *4. Here, neither party asserts that the substantive law governing Organo's claims will be complex. (*See* Mot.; Resp.) Accordingly, both this

court and the transferee court are equally equipped to handle the claims in this case. Thus, the court concludes that this factor is neutral.

**C.      Plaintiff's Choice of Forum**

As the plaintiff in this action, Organo's choice of forum "receives substantial deference," and Defendants must "'make a strong showing of inconvenience' to upset that choice." *Stanbury*, 2016 WL 3255003, at *4 (quoting *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986)). Organo's forum preference, however, "is not dispositive." *Id.* (citing *Norwood v. Kirkpatrick*, 349 U.S. 29, 32 (1955) (holding that "the discretion to be exercised is broader" under § 1404(a) than under the *forum non conveniens* doctrine)). Furthermore, "[w]here the action has little connection with the chosen forum, less deference is accorded [to] plaintiff's choice, even if plaintiff is a resident of the forum." *Pedigo Prod., Inc. v. Kimberly-Clark Worldwide, Inc.*, No. C12-5502BHS, 2013 WL 364814, at *3 (W.D. Wash. Jan. 30, 2013) (citing *Norwood*, 349 U.S. at 42)).

Organo operates an office and warehouse in Ferndale, Washington, where the Branded Products were stored. (Perrett Decl. ¶ 9-10; 21.) However, Organo's claims against Defendants arise from the actions taken—or not taken—by Mr. Norman in Florida. (*See* Compl. ¶¶ 14-24.) Furthermore, all of Defendants' negotiations and dealings with Organo were with individuals located in Richmond, British Columbia, Canada, and not with employees located in Ferndale, Washington. (*See* Filon Decl. ¶ 8.) Although Defendants cannot completely overcome the presumption in favor of Organo's

//

choice of forum, the court finds that the limited connection between Washington and Organo's claims means that this factor weighs only marginally against transfer. *See Pedigo*, 2013 WL 364814, at *3.

**D.    Parties' Contacts with the Forum**

This factor focuses on the respective parties' contacts with the forum. As noted above, Organo is a Canadian corporation with its headquarters located in Richmond, British Columbia. (Perrett Decl. ¶ 3.) The British Columbia headquarters are "where the majority of Organo's business records are kept, and where the majority of Organo's executive work out of." (*Id.*) Organo's Ferndale, Washington office and warehouse employs 10 people who "are principally responsible for managing [United States] logistics in coordination with Organo's headquarters." (*Id.* ¶ 9.) The Ferndale office is "responsible for product inventory, collation, assembly, inspection [and] quality assurance, as well as all corresponding logistics." (*Id.*) The logistics include storing and processing the Branded Products. (*Id.* ¶¶ 9, 22.) Furthermore, the Ferndale office "works in conjunction with [Organo's] Events team, and coordinates all of the logistics for product and event supplies for events held in the [United States] in a calendar year." (*Id.*) With respect to the IDA, the Ferndale office also processed the approximately 20 purchase orders that Mr. Chessler placed. (*Id.* ¶ 18.)

On the other hand, Defendants do not have any contacts with Washington. ARMS, a Cayman Islands company with its principal place of business in West Palm Beach, Florida, does not have an office in Washington and is not registered to do business in Washington. (Filon Decl. ¶¶ 3-4.) Furthermore, ARMS does not advertise or

sell any products to Washington residents. (*Id.* ¶ 4.) Shark, a Delaware company with its principal place of business in New York, also does not have an office in Washington, nor does it advertise or sell any products to Washington residents. (Dubiner Decl. ¶¶ 3, 5.) None of the Defendants own real property or maintain bank accounts or employees in Washington. (*Id.*; Mot. at 2.) Neither ARMS nor Mr. Norman has ever visited Organo's Ferndale office or otherwise conducted any business activities in Washington. (Filon Decl. ¶ 7.)

Organo has extensive contact with Washington through the company's Ferndale office. Defendants, however, have no contact with the forum. (*See* Filon Decl. ¶¶ 1, 3, 6.) Thus, on balance, the court concludes that this factor is neutral.

**E.     Contacts Relating to Plaintiff's Cause of Action in the Chosen Forum**

This factor concerns the contacts between Organo's claims against Defendants and Washington. As detailed above, Organo's Ferndale office housed and coordinated the logistics pertaining to the Branded Products. (Perrett Decl. ¶¶ 9, 22.) However, Organo's claims against Defendants do not arise from the Branded Products but rather from Mr. Norman's alleged lack of performance and the sale of the "Norman Identity" to Shark. (*See* Compl. ¶¶ 14-24, 33.) Therefore, virtually all of Organo's case-related contacts occurred either in Canada or Florida.

Organo attempts to connect Mr. Norman's alleged non-performance to Washington by arguing that he was in Washington for a week during 2015 "to broadcast the U.S. Open at Chambers Bay for Fox Sports." (Perrett Decl. ¶ 25.) Organo claims that it was "unable to obtain Mr. Norman's cooperation to even meet during the Open,

attend an event, or otherwise promote the Branded Products." (*Id.*) The Agreements, however, do not specify where Mr. Norman's promotional activities were to take place, or that Mr. Norman was under any obligation to promote the Branded Products during that time. (*See* Compl.; Resp.) Plaintiffs cannot point to a single action taken by Defendants in Washington that give rise to the claims at issue. Defendants, however, took actions in Florida, such as the execution of an agreement with Shark, that support transfer. (*See* Dubiner Decl. ¶ 4; Mot. at 6.) Accordingly, the court concludes that this factor weighs in favor of transfer to the Southern District of Florida.

**F.     Differences in the Cost of Litigation in the Two Forums**

When weighing the difference in cost between two forums, courts generally disfavor transferring venue when "transfer would merely shift rather than eliminate" costs and inconvenience. *T-Mobile USA*, 2016 WL 1464468, at *6 (internal quotation marks omitted) (quoting *Decker Coal*, 805 F.2d at 843). "The relative cost analysis focuses primarily on the venue's proximity to witnesses." *Stanbury*, 2016 WL 3255003, at *6. Defendants claim that the "substantial majority of the potential witnesses" reside in Florida. (Mot. at 5-6.) Organo asserts that "at least five members of its executive team" from British Columbia, Canada, will serve as witnesses. (Resp. at 13-14.)

Defendants fail to carry their burden of showing that transfer would reduce costs. At most, the change in venue would merely shift costs to Organo. *See Decker Coal*, 805 F.2d at 843. Both parties claim to have witnesses who would need to travel depending on the location of the forum, but Defendants fail to indicate how many witnesses may need

//

to do so. (*See* Mot. at 5-6; Resp. at 13-14; Reply (Dkt. # 19) at 7.) Thus, the court concludes that this factor weighs slightly against transfer.

**G.     Availability of Compulsory Process**

For purposes of a motion to transfer, "[a] court's subpoena power is only relevant if non-party witnesses within the state will likely refuse to testify." *Stanbury*, 2016 WL 3255003, at *7; *see also Silver Valley Partners, LLC v. De Motte*, No. C05-5590RBL, 2006 WL 2711764, at *4 (W.D. Wash. Sept. 21, 2006) (concluding that the fact that "[n]one of these witnesses will likely be unwilling to testify" eliminates the factor's importance). Defendants do not identify any witnesses in Florida who would require a subpoena to appear in Washington. (*See* Mot.; Reply.) Therefore, the court concludes that this factor is neutral.

**H.     Ease of Access to Sources of Proof**

The ease of access to sources of proof primarily focuses on the location of witnesses and documentary evidence. *See Jinni Tech Ltd. v. Red.com, Inc.*, No. C17-0217JLR, 2017 WL 4758761, at *1 (W.D. Wash. Oct. 20, 2017), *reconsideration denied*, No. C17-0217JLR, 2018 WL 581071 (W.D. Wash. Jan. 25, 2018). However, "the ability to transfer documents electronically with relative ease and little expense may lessen the importance of this factor with respect to documentary evidence." *Id.* As discussed above, the key witnesses are located either in British Columbia, Canada or Florida. (Perrett Decl. ¶ 3; Resp. at 14; Mot. at 5-6.) Furthermore, because the claims against Defendants do not arise out of the Branded Products, the

//

evidence is likely documentary, which can be shared electronically.  The court, therefore, concludes that this factor is neutral.

I.  **Public Policy of the Forum State**

Finally, the court assesses the public policy impact of a transfer.  Public policy factors include the "local interest in having localized controversies decided at home" and deciding cases "where the claim arose."  *Stanbury*, 2016 WL 3255003, at *7 (internal quotation marks omitted) (quoting *Decker Coal*, 805 F.2d at 843).  "Additionally, states have an interest in providing a forum for their injured residents."  *Id.*

Washington does not have a strong tie to this litigation.  First, none of the parties are Washington residents.  (*See* Mot.; Resp.)  Second, this dispute arises from two Agreements, neither of which was executed in Washington.  (Filon Decl. ¶ 8; Perrett Decl. ¶ 13.)  Third, even though Organo's Ferndale office and warehouse are located in Washington (Perrett Decl. ¶ 9), Organo's claims do not arise from the Branded Products stored at those facilities (*see* Compl. ¶¶ 14-24).  As discussed extensively above, Organo's claims against Defendants arise solely from activity outside of Washington, and accordingly, are not "localized controversies."  *See Stanbury*, 2016 WL 3255003, at *7 (internal quotation marks omitted) (quoting *Decker Coal*, 805 F.2d at 843).  Of particular importance, Organo asserts that Mr. Norman and ARMS "sold or otherwise transferred the underlying rights and obligations" under the Agreements to Shark "without the express consent of Organo."  (Compl. ¶ 22-23.)  Mr. Norman's actions took place entirely outside of Washington.  Thus, Florida's interest in the present action is stronger than Washington's because nearly all of the Defendants reside in Florida and nearly all of the

alleged actions took place in Florida. Accordingly, the court finds that this factor supports transfer.

**J.  Balancing the *Jones* Factors**

In light of the foregoing factors, the court concludes that transfer to the Southern District of Florida is appropriate. The court finds that only two factors weigh against transfer—factors three and six. Of the remaining factors, four are neutral—factors two, four, seven, and eight—and three weigh in favor of transfer—factors one, five, and nine. Most importantly, the parties' case-related contacts are not sufficient to show that Washington has a "local interest" in this case. *See Stanbury*, 2016 WL 3255003, at *7. Thus, the court grants Defendants' motion.[5]

## IV.  CONCLUSION

For the reasons set forth above, the court GRANTS Defendants' motion to transfer venue pursuant to 28 U.S.C. § 1404(a) (Dkt. # 8). The court DIRECTS the Clerk of the Court to transfer this case to the Southern District of Florida.

Dated this 24th day of May, 2018.

JAMES L. ROBART
United States District Judge

---

[5] Because the court grants the motion to transfer, the court declines to decide Defendants' alternative basis for relief—dismissal for lack of personal jurisdiction. (*See* Mot.)